# EXHIBIT 1

# INVENTORY SECURITY AGREEMENT

THIS INVENTORY SECURITY AGREEMENT, as amended from time to time (this **"ISA"**), and together with any Terms Statements, as herein after defined (collectively, the **"Agreement"**) is between the undersigned TCF INVENTORY FINANCE, INC. (**"Lender"**) and Gulf Management, LLC a(n) New York Limited Liability Company (**"Dealer"**).

The parties agree that this ISA amends and restates in its entirety (without constituting a novation) any existing loan and security agreement between the parties (in the case of Lender, either directly, or indirectly through assignment) dated prior to the date hereof relating to the transactions contemplated hereby and thereby. The parties further agree as follows:

1. **Definitions**. In addition to terms defined elsewhere herein, **"accessions," "account," "chattel paper," "deposit account," "document," "equipment," "fixture," "general intangibles," "goods," "instrument," "inventory"** and any other terms not otherwise defined herein shall have the meanings assigned to them in Article 9, and **"person"** shall have the meaning assigned to it in Article 1, of the Illinois Uniform Commercial Code (the **"UCC"**) as of the date of this ISA. **"Advance"** means an extension of credit hereunder; **"Affiliate"** means any person that (i) directly or indirectly controls, is controlled by or is under common control with Dealer, (ii) directly or indirectly owns five percent (5%) or more of Dealer, (iii) is a director, partner, manager, or officer of Dealer or an affiliate of Dealer, or (iv) any natural person related to Dealer or an affiliate of Dealer; **"Indebtedness"** means all present and future indebtedness and obligations of Dealer to Lender or to any person that directly or indirectly controls, is controlled by, or is under common control with Lender (a **"Lender Affiliate"**), whether or not arising under the Agreement, of whatever kind, now due or to become due, absolute or contingent, and whether joint, several or joint and several, including without limitation any liabilities, indebtedness and obligations arising under guaranty agreements; **"Prime Inventory"** means inventory which has been financed in whole or in part by an Advance, whether or not such Advance is outstanding; **"Terms Statement"** means a statement of financing terms, a statement of financial transactions or other document or communication (electronic or otherwise) relating to the terms of the financing program under the Agreement, which at Lender's option may be issued by Lender to Dealer from time to time, and which identifies the Prime Inventory financed and/or the Advance made and certain of the terms and conditions of repayment therefore. Any reference in the Agreement to a statement, document or other item issued by Lender shall mean such statement, document or other item in any form or media, whether paper, electronic, digitized or otherwise.

2. **Advances and Approvals.**

(a) Dealer may from time to time apply to Lender, directly or in the manner provided in paragraph (b) of this section, for an Advance under this ISA.

(b) Whenever any person from whom Dealer purchases or may purchase inventory or who advises Lender that it has sold, or may sell, inventory to Dealer (a **"Seller"**) requests in any manner (e.g., orally, in writing, or by electronic transmission) that Lender finance, or confirm that it shall finance (an **"Approval"**), the acquisition of inventory by Dealer from such Seller, such request shall be an application by Dealer for an Advance equal to the purchase price of such inventory. Dealer shall be indebted to Lender for all obligations incurred by Lender on account of the issuance of each Approval. Whenever Lender makes such an Advance, it may be paid by Lender to such Seller, except that Lender may offset any amount owed by such Seller to Lender, including without limitation any discount, payment or other benefit owed by such Seller to Lender **("Lender Offset")**. Dealer agrees that it has no right to any Lender Offset.

(c) This ISA provides a revolving credit facility and Dealer acknowledges Lender shall not be obligated to issue any Approval or make any Advance. If Lender decides in its discretion to issue an Approval or make an Advance, the Approval or Advance may be in the amount requested or a lesser amount, and made upon such conditions as Lender determines. Each Advance shall be deemed made when it is entered by Lender as a receivable on its books. All Advances for all purposes shall be treated as a single loan.

(d) Any invoice (which term shall include paper based or electronically transmitted or accessed invoices) from a Seller received by Lender, pertaining to inventory shipped or to be shipped to Dealer, shall be rebuttably presumptive evidence that Lender has financed the acquisition of such inventory for Dealer and that the amount of such invoice is the original principal amount of Dealer's obligation to Lender on account of such inventory.

3. **Grant and Perfection of Security Interest.**

(a) Dealer hereby grants to Lender a security interest in all Collateral as security for all Indebtedness. **"Collateral"** means the following property or interests in property of Dealer, whether now or hereafter existing, owned, licensed, leased, consigned, acquired or arising, whether in tangible or intangible form, and wherever located: (i) inventory, accounts, chattel paper, documents, instruments, promissory notes, equipment, fixtures, contract rights, investment property, other goods, general intangibles and payment intangibles (including without limitation and whether or not included in the foregoing, Seller Credits, deposit accounts, and certificates of deposit), (ii) any books and records (whether paper, electronic, digitized or otherwise) which relate to any of the foregoing, and any computers, disks, tapes, media, websites, databases, electronic storage devices and other devices upon which, or within which, such records may be stored, (iii) all repossessions, returns, replacements, exchanges, substitutions, parts, attachments, accessories and accessions to or of the foregoing, and (iv) all products and proceeds in any form and wherever located derived directly or indirectly from any dealing with any of the foregoing including, without limitation, insurance proceeds and any other payment representing indemnity or compensation for loss of or damage thereto. **"Seller Credits"** means all of Dealer's rights to any price protection payments, rebates, discounts, credits, factory holdbacks, incentive payments and other amounts which at any time are owing to Dealer from a Seller with respect to, or in connection with, any inventory acquired from such Seller.

(b) Dealer shall provide Lender such financing statements, certificates of origin or title and other writings, in form and substance satisfactory to Lender, and take such other action as Lender may request from time to time to establish and maintain a perfected Lender security interest in the Collateral.

4. **Dealer Representations and Warranties.** Dealer represents and warrants at the time of execution of this ISA and at the time of each Approval and each Advance, unless Dealer has given written notice to the contrary to Lender prior to such Approval or Advance, that:

(a) Dealer shall use all proceeds of all Advances hereunder only for business purposes.

(b) Dealer, if not an individual, is the type of organization set forth at the beginning of this ISA, is in good standing in its state of formation and has all the necessary authority to enter into and perform the Agreement. Dealer does not and shall not violate its articles or bylaws if a corporation, its articles of organization or operating agreement if a limited liability company, or its partnership agreement if a partnership, or any law, regulation or agreement binding upon it, or any of its property or assets, by entering into and performing its liabilities and obligations under the Agreement.

(c) Dealer keeps its records respecting accounts, chattel paper and documents at its main office and principal place of business identified after its signature below (**"Permitted Location"**). The Permitted Location is the only location at which Collateral is or shall be located. Permitted Location shall also include any additional business and warehouse location in the United States identified below, or of which Dealer gives Lender written notice at least thirty (30) days prior to storing Collateral at such location and in respect of which Dealer provides Lender with such waivers, agreements and other instruments as Lender may require for purposes of protecting its security interests in and access to such Collateral. If Dealer is one or more individuals, Dealer shall provide Lender thirty (30) days prior written notice of any change in any such individual's principal residence address.

(d) All information supplied to Lender by Dealer or by any guarantor, surety, issuer of a letter of credit or any person other than Dealer primarily or secondarily liable with respect to any Indebtedness (a **"Guarantor"**), whether previously or hereafter provided, including any financial, credit or accounting statements or application for credit, in connection with the Agreement or any guaranty thereof is true, correct and complete to the best of Dealer's knowledge.

(e) There are no judgments, threatened or pending claims, administrative proceedings or legal actions; or any other events or circumstances affecting or involving Dealer that might result in a material adverse change in Dealer's prospects, business, operations or condition (financial or otherwise) or in the value, function or condition of the Collateral.

5. **Dealer Covenants.**

(a) Until sold as permitted by this ISA, Dealer shall own all Prime Inventory free and clear of all liens, security interests, claims and other encumbrances, whether arising by agreement or operation of law (**"Liens"**), other than the security interest granted to Lender in this ISA, other security interests subordinate thereto to which Lender has expressly consented in writing and other Liens in favor of Lender.

(b) Dealer shall (i) keep all Collateral at a Permitted Location and keep all tangible Collateral in good order, repair and operating condition and insured as required herein; (ii) promptly file all tax returns required by law and promptly pay all taxes, fees, and other governmental charges for which it is liable, including without limitation all governmental charges relating to the Collateral; (iii) permit Lender, without notice, to inspect the Collateral during normal business hours and at any other time Lender deems desirable; (iv) keep complete and accurate records of its business, including inventory and sales, and permit Lender to inspect and copy such records upon request; (v) provide Lender with Dealer's year-end balance sheet and annual profit and loss statement for each of its fiscal years prepared in accordance with generally accepted accounting principles, consistently applied, within twenty (20) days after the same are prepared but in no event later than one hundred twenty (120) days after the end of each fiscal year, or as otherwise requested by Lender from time to time; (vi) furnish Lender with such additional information regarding the Collateral and Dealer's business and financial condition as Lender may from time to time reasonably request; (vii) immediately notify Lender of the occurrence of any Default (as hereinafter defined) or any material adverse change in Dealer's prospects, business, operations or condition (financial or otherwise) or in the Collateral; and (viii) comply with all laws, rules and regulations applicable to Dealer and the Collateral.

(c) Dealer shall not (i) use (except for demonstration for sale), rent, lease, sell, transfer, consign or otherwise dispose of any Collateral except for sales of inventory at retail in the ordinary course of Dealer's business; (ii) sell, transfer or otherwise dispose of inventory to an Affiliate; (iii) engage in any other material transaction not in the ordinary course of Dealer's business; (iv) change its business in any material manner or its structure or be a party to a merger or consolidation; (v) change its name without giving Lender at least thirty (30) days prior written notice; (vi) change its main office or office where it keeps its records with respect to accounts or chattel paper without giving Lender at least thirty (30) days prior written notice; or (vii) finance on a secured basis with any third party the acquisition of inventory of the same brand as any inventory financed or to be financed by Lender, without the prior written consent of Lender.

(d) Dealer may periodically receive Self-Certification Floorchecks (**"SCF"**) from Lender. If Dealer receives an SCF, Dealer shall complete and return the SCF, together with all payments then due, to Lender within fifteen (15) days. If the SCF and all payments due are not received by Lender within twenty five (25) days, Dealer shall pay Lender a late SCF fee, as described in the SCF, in addition to all other amounts then due.

6. **Dealer Payment to Lender.**

(a) Dealer acknowledges that Lender shall deliver periodic statements showing Dealer's Advances, Charges, Fees and Terms and other activity during such period, including without limitation, billing statements, Terms Statements and remittance advices, electronically and Dealer agrees to access such electronic statements through Lender's on-line dealer account management and reporting system. Dealer further acknowledges and agrees that Lender may, at its option, deliver any periodic statement by any other means, at an additional fee to Dealer.

(b) Dealer shall pay Lender the amount of any Advance made to finance the acquisition of any item of Prime Inventory immediately upon the earlier of (i) the sale, transfer, rental, lease or other disposition of such item (and shall hold the entire sale or disposition proceeds therefrom IN TRUST for Lender until paid to Lender and, upon request from Lender, Dealer shall maintain such proceeds in the same form as received, separate and apart from Dealer's other funds and property); (ii) the **"Due in Full"** date with respect to such Advance, as provided for in the Agreement; or (iii) the date such item is damaged, lost or destroyed or is returned to a Seller without Lender's consent or is otherwise not located at a Permitted Location. Any such payment shall be applied by Lender to such Advance. An Advance made to finance the acquisition of a number of items of Prime Inventory shall be allocated among such items in proportion to Seller's respective invoice prices therefore at the time of sale to Dealer.

(c) Lender in its discretion may by notice to Dealer authorize Dealer to pay Lender on a scheduled payment program in whole or in part and Lender may discontinue any such program at any time. While a scheduled payment program is in effect, Dealer payments shall be applied to Advances in the order billed. Anything in the Agreement to the contrary notwithstanding, in order to adequately secure Dealer's Indebtedness to Lender, at Lender's request Dealer shall immediately pay Lender the amount necessary to reduce the sum of (i) outstanding Approvals with respect to inventory received by Dealer; (ii) Advances (excluding any Advance with respect to inventory not received by Dealer); and (iii) accrued Charges (defined below), to an amount which does not exceed the aggregate invoice price to Dealer of Prime Inventory in Dealer's possession in which Lender has a perfected first priority security interest. An Approval shall be deemed outstanding to the extent of its face amount, less the amount of Advances with respect thereto.

(d) Lender may impose fees, interest, finance charges, other charges and credit terms (collectively **"Fees and Terms"**) in connection with Dealer's account generally, specific services or events and/or the administration of Dealer's account. Dealer agrees to pay Lender all Fees and Terms in accordance with any billing statement or Terms Statement wherein such Fees and Terms are imposed. Lender may from time to time provide written notice to Dealer of new or changed Fees and Terms, to be effective with respect to existing Indebtedness and/or future Indebtedness, as Lender may elect and advise in such notice. Such notice may be delivered by mail, courier or electronically in a separate writing or website posting, or included in a Terms Statement or billing statement. Dealer shall be deemed to have accepted such new or changed Fees and Terms by either (i) requesting an Advance after the effective date of such notice, or (ii) failing to notify Lender in writing of any objection to such new or changed Fees and Terms within the time frame specified in such notice. If Dealer objects to the new or changed Fees and Terms, such new or changed Fees and Terms shall not be imposed, but Lender may impose the last Fees and Terms to which Dealer has not objected, and may elect to terminate Dealer's financing program.

(e) Dealer shall pay fees, charges and interest (collectively, **"Charges"**) with respect to each Advance in accordance with the Agreement and as further indicated on the billing statements. Dealer shall pay Lender its customary Charges for any check or other item which is returned unpaid to Lender for any reason whatsoever. Unless otherwise provided in the Agreement, the following additional provisions shall be applicable to Charges: (i) unless otherwise specified by Lender, all Charges shall be paid by Dealer monthly pursuant to the terms of the billing statement; (ii) unless otherwise specified by Lender, in the case where an annual rate of interest is provided for, the daily interest rate shall be calculated by dividing the annual rate of interest by three hundred sixty (360); (iii) interest on each Advance and principal Indebtedness related thereto shall be computed each calendar month on the sum of the daily balances thereof during such month multiplied by the daily interest rate; (iv) interest on an Advance shall begin to accrue on the **Effective Date**, which shall be defined as the earlier of: (A) the ship date referred to in the Seller's invoice; (B) the invoice date referred to in the Seller's invoice; or (C) the date Lender makes such Advance; provided, however, if there is a free floor period with respect to any inventory, interest with respect to the Advance shall begin to accrue the number of days after the Effective Date equal to the number of days in such free floor period whether or not any "common due dates" provided for in a Terms Statement extend the actual payment date beyond the end of such free floor period; (v) for the purpose of determining when Advances are paid and computing Charges, any ACH or

wire payment shall be deemed credited when the funds are received by Lender, any other payment (including payment by check) shall be deemed credited up to three (3) business days after receipt by Lender at the place for payment provided for in the Agreement or, if paid to Lender at any other place, the crediting of payment may be subject to additional delay, provided, however, in any case, if Lender has furnished Dealer with or requested that Dealer provide any remittance detail, to be completed and returned with payments, such payment shall not be deemed credited until the completed remittance detail with respect to such payment is received by Lender; (vi) any payment received by Lender after 2:00 p.m. Central Time where payment is to be made shall be deemed received by Lender on the next business day; (vii) Charges specified on each billing statement shall be due and payable in full immediately upon receipt unless Lender receives Dealer's written objection thereto within fifteen (15) days after the date such statement is transmitted or otherwise sent to Dealer; and (viii) Lender may adjust a billing statement at any time to conform to applicable law and the Agreement.

If Lender does not receive, by the twenty fifth (25th) day of any given month, payment of all Charges accrued to Dealer's account during the immediately preceding month, Dealer agrees (to the extent allowed by law) to pay Lender a late fee equal to the greater of Five Dollars ($5.00) or five percent (5%) of the amount of such Charges; provided, however, payment of any late fee does not waive the default caused by the late payment. Advances not paid when due under subsection 6 (b) of this ISA shall bear interest at the Default Rate. **"Default Rate"** shall mean the highest rate specified in the Terms Statement related to such Advance regardless of the number of days the Advance has been outstanding, or the highest lawful contract rate of interest permitted under applicable law.

If Lender ever receives any amount which, if considered to be interest, would exceed the maximum amount permitted by law, Lender shall apply such excess amount to the reduction of the unpaid principal balance which Dealer owes, and then shall pay any remaining excess to Dealer. In determining whether the interest paid or payable exceeds the highest lawful rate, Dealer and Lender shall, to the maximum extent permitted under applicable law, (1) characterize any non-principal payment (other than payments which are expressly designated as interest payments hereunder) as an expense or fee rather than as interest, (2) exclude voluntary pre-payments and the effect thereof, and (3) spread the total amount of interest throughout the entire term of the Agreement so that the interest rate is uniform throughout such term.

(f) Dealer and Lender agree that the terms of any Advance made by Lender under the Agreement, including but not limited to the due date, curtailments, Due in Full date, the length of any free floor period, and the amount of Charges may vary from time to time and cannot always be agreed upon in advance because such terms depend, in part, upon the availability and/or the amount of any fee or other incentives provided by Sellers or buying groups to Lender for financing of inventory hereunder, Lender floorplan volume with certain Sellers or with Dealer, and other economic factors which vary from time to time. Thus, Dealer agrees to pay each Advance and related Charges in accordance with the Agreement and as further indicated on the billing statements. Dealer agrees that the terms and conditions stated in each Terms Statement shall be accepted as to the Advance identified therein if not objected to in writing by Dealer within the time frame specified in such Terms Statement. If Dealer objects, then where applicable the Advance shall be subject to the terms and conditions of the most recently accepted Terms Statement related to an Advance covering the same model of Prime Inventory. If there is no such previously accepted Terms Statement, Dealer agrees that in addition to any other right or remedy Lender may have under the Agreement, the Advance related to the objected Terms Statement shall be due and payable within thirty (30) days after the date of such Advance and interest shall accrue at the applicable Due in Full rate.

(g) All payments shall be made at such place as Lender shall from time to time designate, and unless otherwise provided in the Agreement or if Dealer is in default, all payments and other amounts received by Lender pursuant to the Agreement, including without limitation insurance proceeds and proceeds of Seller Credits, shall be applied to Indebtedness, whether or not due, in such order as Lender in its discretion shall determine. All payments stated to be due on a day which is not a business day shall be due on the preceding business day.

(h) Any statement with respect to any Indebtedness sent to Dealer by Lender, including without limitation any Terms Statement, shall be subject to subsequent adjustment by Lender but shall be presumed accurate evidence of Indebtedness and information covered thereby, unless Lender shall have received written notice from Dealer specifying any error within fifteen (15) days after the date of such statement. Notwithstanding such notice by Dealer to Lender, Dealer's obligation to make payments to Lender with respect to such statement shall not be waived or extended unless and until Lender consents in writing to such waiver or extension.

(i) Any Advances not made to finance the acquisition of Prime Inventory shall be paid on demand unless otherwise provided in the Agreement.

7. **Insurance.** Dealer shall bear all risk of loss, damage to or destruction of Collateral at all times. Dealer shall keep tangible Collateral insured for full replacement value against all insurable risks under policies delivered to Lender and issued by insurers satisfactory to Lender with loss payable to Lender and at Lender's request under long-form mortgagee endorsements as its interest may appear subject to cancellation or change only upon thirty (30) days (ten [10] days for non-payment of premium) written notice to Lender.

8. **Power of Attorney.** Dealer authorizes Lender to execute, endorse or correct on behalf of Dealer any instruments, chattel paper, certificates of title, manufacturer statements of origin, financing statements and amendments thereto, insurance policies (including claims, checks or drafts related thereto) or other writings comprising Collateral or evidencing financing under the Agreement or evidencing or perfecting the Lender security interest granted herein, as attorney-in-fact for Dealer. This power of attorney and the other powers of attorney granted herein are irrevocable and coupled with an interest.

9. **Credit Information.** Dealer authorizes Lender to investigate and make inquiries of its former, current or future creditors or others, including credit bureaus, and provide to such creditors or others any and all financial, credit or other information regarding or relating to Dealer, whether supplied by Dealer to Lender or otherwise obtained by Lender, with such authority to continue throughout the term of the Agreement.

10. **Default.** The occurrence of one or more of the following events shall constitute a default by Dealer (a **"Default"**): (a) Dealer shall fail to pay any Indebtedness when due to Lender or a Lender Affiliate or any remittance for Indebtedness is dishonored when first presented for payment; (b) any representation made to Lender by Dealer or by any Guarantor (whether contained in the Agreement or otherwise) shall not be true when made or Dealer or any Guarantor shall breach any warranty or agreement to or with Lender; (c) Dealer or any Guarantor shall die, become insolvent or generally fail to pay its debts as they become due or, if a business, shall cease to do business as a going concern; (d) any guaranty, letter of credit, or other assurance of payment with respect to any Indebtedness or Collateral shall terminate or not be renewed at least thirty (30) days prior to its stated expiration or maturity; (e) Dealer shall abandon any Collateral or shall lose the right to sell any Collateral, or any attachment, sale or seizure shall be issued or executed against any Collateral or other assets of Dealer or of any Guarantor, in each case without the prior written approval of Lender; (f) an amendment or termination statement with respect to any financing statement filed by or on behalf of Lender in connection with the Agreement shall be filed by any person without the prior written approval of Lender; (g) Dealer or any Guarantor shall make an assignment for the benefit of creditors, or commence a proceeding with respect to itself under any bankruptcy, reorganization, arrangement, insolvency, receivership, dissolution or liquidation statute or similar law of any jurisdiction, or any such proceeding shall be commenced against it or any of its property (an **"Automatic Default"**); (h) a material adverse change, as determined by Lender in its sole discretion, shall occur in the business, operations or condition (financial or otherwise) of Dealer or any Guarantor or with respect to the Collateral; (i) any debt for borrowed money of, or guaranteed by, Dealer or any Guarantor becomes due by acceleration or otherwise prior to its due date by reason of a default; or (j) Lender in good faith believes the prospect of payment of any Indebtedness is impaired or deems itself insecure. At Lender's option, the cost of any Collateral inspection occasioned by a Default or otherwise not in the ordinary course of business may be added to the Indebtedness.

11. **Lender Rights and Remedies Upon Default.** Upon the occurrence of a Default, Lender shall have all rights and remedies of a secured party under the UCC and other applicable law and all the rights and remedies set forth in the Agreement. Lender may terminate this ISA and any outstanding Approvals immediately and/or declare any and all Indebtedness immediately due and payable without notice or demand. Dealer

waives notice of intent to accelerate, and of acceleration of, Indebtedness. Lender may enter any premises of Dealer, with or without process of law, without force, to search for, take possession of, and remove any Collateral. If Lender requests, Dealer shall cease disposition of and shall assemble the Collateral and make it available to Lender, at Dealer's expense, at a convenient place or places designated by Lender. Lender may take possession of the Collateral or any part thereof on Dealer's premises and cause it to remain there at Dealer's expense, pending sale or other disposition. Dealer agrees that the sale of inventory by Lender to a person who is liable to Lender under a guaranty, endorsement, repurchase agreement or the like shall not be deemed to be a transfer subject to UCC Sections 9-615(f) or 9-618 or any similar provision of any other applicable law, and Dealer waives any provision of such laws to that effect. Dealer agrees that any repurchase of inventory by a Seller pursuant to a repurchase agreement with Lender shall be a commercially reasonable method of disposition. Dealer shall be liable to Lender for any deficiency resulting from Lender's disposition, including without limitation a repurchase by a Seller, regardless of any subsequent disposition thereof. Dealer is not a beneficiary of, and has no right to require Lender to enforce, any repurchase agreement. Any notice of a disposition shall be deemed reasonably and properly given if given to Dealer at least ten (10) days before such disposition. If Dealer fails to perform any of its obligations under the Agreement, Lender may perform the same in any form or manner Lender in its discretion deems necessary or desirable, and all monies paid by Lender in connection therewith shall be additional Indebtedness and shall be immediately due and payable without notice together with interest payable on demand at the Default Rate. All of Lender's rights and remedies shall be cumulative. At Lender's request, or without request in the event of an Automatic Default, Dealer shall pay all Seller Credits to Lender as soon as the same are received for application to Indebtedness. Dealer authorizes Lender to collect such amounts directly from Sellers and, upon request of Lender, shall instruct Sellers to pay Lender directly.

12. **Dealer Claims Against Sellers.** Dealer shall not assert against Lender any claim or defense Dealer may have against any Seller whether for breach of warranty, misrepresentation, failure to ship, lack of authority, or otherwise, including without limitation claims or defenses based upon charge backs, credit memos, rebates, price protection payments or returns. Any such claims or defenses or other claims or defenses Dealer might have against a Seller shall not affect Dealer's liabilities or obligations to Lender. Dealer's obligation to pay Lender for Advances and Charges is absolute and unconditional.

13. **Notices.** All notices to be given hereunder to a party shall be in writing and delivered by courier or sent by registered mail to the main address for Dealer and the address for Lender set forth below the signature line for such party at the end of this ISA, or at such other address designated by such party by written notice. All such properly given notices shall be deemed effective on the date delivered.

14. **Term and Termination.** Unless sooner terminated as provided in this ISA or by at least thirty (30) days prior written notice from either party to the other, the term of the Agreement shall be for one (1) year after the date of this ISA and automatically from year to year thereafter; provided, however, Lender may terminate the Agreement immediately by notice to Dealer in whole or only with respect to certain product lines if Dealer shall lose or relinquish any right to sell or deal in any product line of Prime Inventory or if Dealer fails to pay an Advance due to an objection to the terms of any Terms Statement and Lender determines that the Terms Statement does not contain a bona fide error. Upon termination of this ISA, all Indebtedness (or, if this ISA is terminated only with respect to certain product lines, the Indebtedness relative to such product lines) shall become immediately due and payable without notice or demand. Upon any termination, Dealer shall remain fully liable to Lender for all Indebtedness, including without limitation, Charges arising prior to or after termination, and all Lender's rights and remedies and its security interest shall continue until all Indebtedness is paid and all obligations of Dealer under the Agreement are paid and performed in full. If Lender makes Advances in reliance on a repurchase agreement from a Seller, Lender may cease making such Advances if it has any concern as to whether such repurchase agreement shall cover future Advances, or be performed by such Seller. No provision of the Agreement shall be construed to obligate Lender to make any Advances.

15. **Submission to Jurisdiction; Waiver of Bond.** Dealer hereby consents to the jurisdiction of any local, state or federal court located within the State of Illinois and waives any objection which Dealer may have based on improper venue or forum non conveniens to the conduct of any action or proceeding in any such court and waives personal service of any and all process upon it, and consents that all such service of process be made by mail or messenger directed to it in the same manner as provided for notices to Dealer in this ISA, and that service so made shall be deemed to be completed upon the earlier of actual receipt or three (3) days after the same shall have been posted to Dealer or Dealer's agent as set forth below. Dealer hereby irrevocably appoints CT Corporation System as Dealer's agent for the purpose of accepting the service of any process within the State of Illinois. Nothing contained in this section shall affect the right of Lender to serve legal process in any other manner permitted by law or affect the right of Lender to bring any action or proceeding against Dealer or its property in the courts of any other jurisdiction. Dealer waives, to the extent permitted by law, any bond or surety or security upon such bond which might, but for this waiver, be required of Lender.

16. **Governing Law.** THE AGREEMENT SHALL BE CONSTRUED IN ALL RESPECTS IN ACCORDANCE WITH, AND GOVERNED BY THE INTERNAL LAWS (AS OPPOSED TO CONFLICTS OF LAW PROVISIONS) OF THE STATE OF ILLINOIS, EXCEPT THAT QUESTIONS AS TO PERFECTION OF LENDER'S SECURITY INTEREST AND THE EFFECT OF PERFECTION OR NONPERFECTION SHALL BE GOVERNED BY THE LAW WHICH WOULD BE APPLICABLE EXCEPT FOR THIS SECTION.

17. **Jury Waiver.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES HERETO EACH WAIVE ANY RIGHT TO A TRIAL BY JURY ON ANY CLAIM, DEMAND, ACTION, CAUSE OF ACTION OR COUNTERCLAIM ARISING UNDER OR IN ANY WAY RELATED TO THE AGREEMENT, AND UNDER ANY THEORY OF LAW OR EQUITY, WHETHER NOW EXISTING OR HEREAFTER ARISING.

18. **Inconsistent Provisions.** In the event of an inconsistency between this ISA and a Terms Statement, the Terms Statement shall govern the terms and conditions of the related Advance. All Terms Statements shall be cumulative.

19. **Limitation of Remedies and Damages.** Lender and Dealer agree that in the event there is any dispute relating to or arising in connection with the Agreement, the aggrieved party shall not be entitled to any punitive, exemplary or consequential damages in connection with any action arising under or in any way related to the Agreement.

20. **General.**

(a) Time is of the essence in the performance of Dealer's obligations under the Agreement. Any waiver by Lender of a Default shall only be effective if in writing and signed by Lender. Any waiver of a Default in a particular instance or of a particular Default shall not be a waiver of other Defaults or of the same kind of Default at another time. No modification of the Agreement shall bind Lender unless in writing and signed by Lender.

(b) The Agreement shall inure to the benefit of Lender and its successors and assigns and may be assigned by Lender in whole or in part. References to Lender shall be deemed to refer to Lender and its successors and assigns. Dealer may not assign this ISA without the prior written consent of Lender. The Agreement shall be binding upon the parties hereto and their respective heirs, personal representatives, successors and permitted assigns.

(c) Dealer shall pay to Lender on demand all reasonable attorneys' fees and legal expenses and other costs and expenses incurred by Lender in connection with establishing, perfecting, maintaining perfection of, protecting and enforcing its security interest in the Collateral and collecting Indebtedness, or in connection with any modification of this ISA, any Default or in connection with any action or proceeding under any bankruptcy or insolvency laws.

(d) Any provision of the Agreement found upon judicial interpretation or construction to be prohibited by law shall be ineffective to the extent of such prohibition, without invalidating the remaining provisions hereof.

21. **Effective Contract.** Dealer acknowledges that it has had ample opportunity to review and consider the terms and conditions of this ISA and fully understands the terms and conditions hereof. This ISA may be executed by facsimile signature or electronic transmission, as directed by Lender. This ISA is not a valid contract until accepted by Lender in Illinois. Acceptance may be by facsimile signature or electronic transmission or by issuance of an Approval or making an Advance. Dealer hereby waives notice of acceptance of this ISA by Lender.

22. **Integration; Final Writing.** The Agreement represents the complete and final agreement between the parties and supersedes all prior agreements and understandings relating to the transactions contemplated hereby and thereby. Further the parties agree that this ISA amends and restates in its entirety (without constituting a novation) any existing loan and security agreement between the parties (in the case of Lender, either directly or indirectly through assignment) dated prior to the date hereof relating to the transactions contemplated hereby and thereby. Lender and Dealer may use and rely on any facsimile copy or electronic version of the Agreement as an original and the best evidence thereof for all purposes.

Date: May 07, 2018

Gulf Management, LLC
**(Dealer)**

| | | | |
|---|---|---|---|
| By: | Lowell Warner<br>Lowell Warner (May 8, 2018) | By: | |
| Print Name: | Lowell Thomas Warner | Print Name: | |
| Title: | Member and Manager | Title: | |
| By: | | By: | |
| Print Name: | | Print Name: | |
| Title: | | Title: | |

Dealer's Main Office and Principal Place of Business:

| 7289 US Highway 11 | Potsdam, New York 13676 |
|---|---|
| Street | City, State, Zip |

Additional Permitted Location(s):

| Street | City, State, Zip |
|---|---|

Dealer's Principal Residence Address if Dealer is an individual (for UCC filing purposes):

| | | , |
|---|---|---|
| Name | Street | City, State, Zip |
| Name | Street | City, State, Zip |

---

**FOR USE BY TCF INVENTORY FINANCE, INC.**

Accepted in Illinois:

**TCF INVENTORY FINANCE, INC.**

By: Kathrin Duda
Kathrin Duda (May 15, 2018)

Print Name: Kathrin Duda
Title: Documentation Specialist

Address for Notices:

P.O. Box 59376
Schaumburg, IL 60159-0376